[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown by writ and complaint returnable to this court December 14, 1993. She also sought alimony, an assignment of the defendant's interest in certain real estate, an equitable property settlement, and other relief, as on file.
The defendant husband's answer admitted all of the allegations of the complaint. In his cross complaint, he also seeks a dissolution of the parties' marriage on the ground of irretrievable breakdown, a distribution of real and personal property, and other equitable relief.
The parties were represented by counsel throughout these vigorously litigated proceedings. At trial, each spouse testified. The husband's sister, who is a bank loan officer, a real estate appraiser, and one of the wife's former husbands also testified. A great number of documentary materials, including appraisal reports, earnings statements, cancelled checks, deeds and closing documents, photographs, a videotape and receipts were introduced into evidence. CT Page 8268
The parties also submitted financial affidavits, and counsel made oral arguments on June 27, 1995, when the taking of evidence was concluded. The parties requested and were granted until July 11, 1995, to file post-trial briefs, and they did so, and the hearing was deemed completed as of July 11, 1995. From the evidence, I find as follows:
The plaintiff wife, whose birth name was Linda Thomas, married the defendant husband in Norwich, Connecticut, on May 23, 1991. She has resided continuously in this state for at least one year before the date of the complaint. There are no minor children issue of the marriage and none have been born to the wife since the date of the marriage. Neither spouse has been a recipient of public assistance, all statutory stays have expired, and the court has jurisdiction.
The wife is 42 years old, a high school graduate and in good physical health. She has suffered from depression for a long period of time. Her mental condition, for which she takes medication, does not appear to impair her ability to perform her job. There was no evidence that this condition caused her to miss time from work. She formerly worked as a construction laborer. Now and for the past almost ten years, she has been employed by the state of Connecticut, Department of Transportation as a maintainer and snow plow driver. She earns $585[1] per week gross and nets $412 per week. She has health and life insurance benefits, is a union member, and her pension benefits will be vested shortly.
The husband is 43 years old and a high school graduate. He is a skilled carpenter and has been in the construction field for 25 years. He was seriously injured in a work-related accident in 1985, leaving him with permanent disabilities of his back and right hand, and a heart condition for which he takes medication. These injuries and their effects have not appeared to affect his ability to work in his present job as a construction supervisor. There was no evidence that his health caused him to lose time from his present job. Nor was there evidence that his health impaired his ability to perform as a general contractor and carpenter in the construction of the jointly-owned marital dwelling at 18 White Plains Road, Norwich. In his financial affidavit, he reports earnings of $740 per week gross, $557 net per week.[2] He has insurance benefits and a 401K plan through his employment to which he and his employer contribute. CT Page 8269
This short marriage broke down irretrievably in less than two and one-half years. It is the third marriage for both. The husband has two sons from one of his prior marriages. The parties lived together before the marriage for about as long as they lived together during the marriage. For nonpayment of his share of the household expenses, the wife caused the husband to be evicted in early 1991 (prior to the marriage) from her then solely owned, now jointly owned, marital dwelling, which the couple had caused to be constructed.
The wife attributes the destruction of the marriage to the husband's failure to live up to a number of promises, his dealings with money and financial matters, the behavior of his younger son, Craig, while residing in the home, and the husband's response thereto, and the husband's extensive outside activities. The husband claims that he did not know why the marriage had broken down. He does not seriously dispute that the wife requested that he attend marriage counseling, and that he refused. I find from the credible evidence that the husband bears a greater responsibility for the disintegration of the parties' marriage than does the wife.
The parties own modest assets as shown by their financial affidavits. These include: the jointly-owned dwelling at 18 White Plains Road, Norwich, Connecticut, valued at $140,000, less mortgage of $53,000, leaving equity of $87,000; an adjoining lot, 16 White Plains Road, Norwich, Connecticut, which the court finds has minimal worth in its present state;[3] a jointly-owned time share in Newport, Rhode Island, reported by the husband to be valued at $11,000 less mortgage of $10,000, leaving equity of $1,000; a jointly-owned dump truck worth $4,500; and furniture, furnishings, antiques and tools worth $5,000.
In addition, the husband has a 401K plan worth $9,977 and $200 in his checking account. The wife reports $1,050 in bank accounts. Her pension benefits will vest shortly. They each have motor vehicles; the wife a ten year old vehicle worth $1,500, but fully paid for; the husband a 1995 vehicle worth $20,000, with no equity.
Against these assets, they report the following liabilities: wife, $10,648 including $3,000 in attorney's fees and $3,988 in past due real estate taxes on No. 16 White Plains CT Page 8270 Road; the husband, $4,850 in credit card and miscellaneous bills.[4]
The major bone of contention between the parties, in addition to their ongoing battle over tangible personalty, devolves around their respective contributions to the family dwelling, and how the equity in the dwelling, or in the alternative, equivalent property, ought to be distributed and assigned.
The wife obtained two approved adjoining building lots via her second divorce, Nos. 16 and 18 White Plains Road, Norwich, Connecticut (hereinafter No. 16 and No. 18 respectively). In 1988[5], the lots were each worth in the neighborhood of $50,000. Before the parties married, the wife conveyed No. 16 to the husband. The purpose of the conveyance was at least twofold: to avoid a unity of title or merger problem under local zoning regulations, and to allow the husband to build a dwelling on "speculation", sell it and equally divide the profits. He agreed to pay the real estate taxes on the lot.
The husband did tree and brush clearing on No. 16 and caused a foundation hole to be dug. He then stopped work on the project except for arranging for fill from a road contractor to be deposited on the site. A pond was created and the local inlands commission issued a cease and desist order forbidding further work on the lot. The appraiser, Boecherer, testified that as a result of the uncertainty created by the regulatory status of the lot he was unable to express an opinion as to its present value, and that its present highest and best use without the resolution of the wetlands problem, was as `recreational land' for an abutting owner. I find this testimony credible. It is evident that the husband's actions and omissions with respect to No. 16 have seriously and adversely affected the value of the lot. Title to No. 16 was eventually reconveyed to the parties as joint tenants.
The defendant, with the consent of the plaintiff, them: turned his ministrations to No. 18. The couple agreed to build a home for themselves on this lot. To that end, the wife obtained a construction mortgage of $45,000 on No. 18, which was later refinanced to a permanent mortgage of $60,000. Almost all of the $60,000 went into the site work and construction of the house. In addition, the wife contributed some $8,000, the proceeds of her IRA account, to the project. The husband acted CT Page 8271 as general contractor, and did the carpentry work, including the roof and framing, and some of the other labor with the help of some family members and friends. He delegated the majority of the work, such as foundation, electrical, well and plumbing, heating and air conditioning, masonry, etc., to subcontractors The wife did some work on the house on evenings and weekends, as she was working full time; the husband was then unemployed and was able to devote much of his time and energies to its construction.
In addition to his work as a general contractor, carpenter and laborer, he claims to have contributed about $40,000 in cash to the construction of the home, including $30,000 of the proceeds from the commutation of a portion of his worker's compensation award, which netted him $32,462 in 1989. A large portion of his claimed expenditure of $40,000 is not buttressed by cancelled checks or other appropriate documentation, although his sister, Ms. Noyes, a banking loan officer, assisted him in the disbursement of the funds. The passbook detailing the withdrawals from the account from which the funds were disbursed was testified to as "missing". The wife claims that the husband contributed at the most about $18,800. I find the wife's testimony on this matter more credible.
The husband claimed that the cost of construction of an equivalent home would be about $200,000 (1,600 sq. ft. x $125 per sq. ft.), and that a general contractor could expect a profit of between $25,000 to $35,000 on the job. He asks the court to draw the conclusion that his labor and services were reasonably worth an amount in this range.
Even if the husband's claim may be accurate, the problem is that the present value of the house and lot (No. 18)in the aggregate is only $140,000. The parties' total contribution to the house in cash, labor and the value of the lot, based on the credible evidence, ranges from about $162,000 to $193,000. Thus, this combined effort (which all occurred prior to the marriage) resulted in a substantial `paper' loss to the parties.
I find from the totality of the circumstances that the monetary contributions made by the wife to the marriage and the marital assets, including payments toward the mortgage and day-to-day household expenses, were greater than those made by the CT Page 8272 husband. And, in view of the diminution in value to No. 16 solely caused by the acts and omissions by the husband, it is entirely unnecessary, in the context of this case, to more precisely track the dollar value of their respective contributions. It is also significant to note that the husband agreed to be solely responsible for the payment of the real estate taxes on No. 16, which agreement he has not fulfilled, reducing the equity in that lot, if any, even further. I also note that No. 16 will require some effort and expense to become marketable as a building lot and that No. 18 (the dwelling lot, garage and shed) will require substantial clean up and debris removal and disposal, in order to remove the items placed and stored there by the husband.[6]
I conclude from the photographs and other evidence that the items left by him on the premises (excluding those within the home) have minimal, if any, value, and will require some time and effort for removal, and more likely are a liability, rather than an asset.
I reject the wife's request that the husband receive title to No. 16 as a portion of his share of the marital assets as both unworkable and inappropriate. In my judgment, the parties' status as abutting land owners would, in all probability, perpetuate their interminable disputes.
I also find an arrearage due the wife from the husband of $2,235 as of June 27, 1995 on account of a past pendente lite order.
I also find that the husband removed from the family premises a significant portion of the tangible personal property, including tools, equipment, antiques, furniture and furnishings, including some items he had given the wife as gifts.
I find that the total value of all of the tangible personal property (other than motor vehicles), in the possession of both parties, in the aggregate is $5,000, and that it appears from all of the circumstances that this tangible personal property has already been substantially and equitably divided, with the exception of a few items on Defendant's Exhibit C, hereafter referred to.
I also find that the husband has greater income and CT Page 8273 earning capacity than the wife and has a better opportunity than she has for future acquisition of capital assets and income.
I have considered all of the criteria contained in General Statutes §§ 46b-62 46b-81 and 46b-82 in the light of the evidence and my findings, and the following orders shall enter.
(1) The parties' marriage is dissolved on the ground of irretrievable breakdown
(2) All right, title and interest in the following real and personal property is hereby vested in and assigned to the wife, free of husband's claims (except as set forth in paragraphs 3 and 4 below):
Nos. 16 and 18 White Plains Road, Norwich, Connecticut; all the household furnishings and furniture and other tangible personal property located thereon; her 1985 motor vehicle; her bank accounts; and her pension/retirement plan through her place of employment. The wife shall pay the mortgage and real estate taxes due on said premises and indemnify and save the husband harmless therefrom. There is also assigned to and vested in the wife twenty-five (25%) percent of the husband's 401K plan, valued as of July 1, 1995, to be done by Qualified Domestic Relations Order (QDRO). I retain jurisdiction over the QDRO until the transfer is accomplished.
(3) All right, title and interest in and to the following real and personal property is hereby vested in and. assigned to the husband, free of the wife's claims; the time share located at Inn of the Harbor, Newport Rhode Island; his 1995 Saturn motor vehicle; the remaining seventy-five (75%) percent of his 401K plan; the dump truck; his bank account; and the tangible personal property now in his possession, including the 1985 Sunbird and 1986 Chevrolet motor vehicles. He shall pay the indebtedness on the time share and indemnify and save the wife harmless therefrom. The husband shall also take and have the following items described on Defendant's Exhibit C: four (4) of the eight (8) oriental rugs each party to choose one alternately, the first choice to be determined by lot; the mantle clock; the wooden sled; the oak commode and oak barber shop chest; the red velvet chair; the medicine cabinet (if not installed); the marble clock and the two oil lamps. CT Page 8274
(4) The wife shall execute and deliver to the husband a promissory note in the amount of $11,130 payable with interest at the rate of three (3%) percent per annum, secured by a mortgage on No. 18. The principal and interest shall be due and payable on the first to occur of the following events: wife's death, remarriage, sale of the premises, ceasing to reside there as her principal residence, or July 1, 1999. Said mortgage note and deed shall provide: that default in the first mortgage, failure to pay the real estate taxes when due, or failure to maintain homeowner's insurance coverage naming the husband thereon as loss payee, shall be a default of said note, and render the principal and accrued interest immediately due and payable. Said note and mortgage shall further provide for attorney's fees and an increase in the rate of interest to ten (10%) percent per annum upon default.
(5) The husband shall pay to the wife the sum of $1 per year periodic alimony, modifiable by her only if he fails to indemnify and save her harmless from the time share mortgage, and said $1 per year shall terminate upon the discharge of her liability thereon. The alimony award set forth herein shall not be otherwise modifiable as to term or amount and shall terminate upon the death of either party, the wife's remarriage or pursuant to the provisions of § 46b-86 (b). I find said indemnification is necessary for her support, and that said alimony order of $1 per year and indemnification is actually in the nature of support. No other alimony, periodic or lump sum, is awarded to either party.
(6) The husband shall pay to the wife, toward her attorney's fees, the sum of $500 within thirty (30) days from the date hereof. I find that a denial in toto of an award of attorney's fees to the wife would undermine the other financial awards herein. In the event the $500 is not paid on or before said date, then the items on Exhibit C, set out to the husband in paragraph (3) above, shall belong to the wife, and his obligation to pay said amount shall be extinguished.
(7) Each party shall execute and deliver quit claim deeds and all other instruments necessary or incidental to effect the orders set forth, and the personal property shall be selected and delivered, within thirty (30) days of the date of this decree. If not so done, then the assignments of title and the mortgage interest shall be done by judicial decree pursuant CT Page 8275 to General Statutes § 46b-81 (a).
(8) The arrearage of $2,235 shall be paid at the rate of $50 per week until paid in full. No arrearage is found for the period between June 27, 1995, and the date of final judgment as it has been considered in the establishment of the other orders herein.
(9) Each party shall pay the obligations shown on Schedule 3 of their financial affidavits filed April 25, 1995.
(10) The arrearage payments shall be secured by immediate wage garnishment.
(11) The wife's birth name of Thomas is restored to her.
Teller, J.